DAVID I. GLOVER,

        Plaintiff,

        v.

RICHARD J. HRYNIEWICH
and
THE CITY OF NORFOLK, VIRGINIA,

        Defendants.

Civil Action No. 2:17cv109

---

TIMOTHY B. PRIDEMORE,

        Plaintiff,

        v.

RICHARD J. HRYNIEWICH
and
THE CITY OF NORFOLK, VIRGINIA,

        Defendants.

Civil Action No. 2:17cv110

## OPINION & ORDER

This matter is before the Court pursuant to four (4) Motions: (1) Defendant City of Norfolk's ("City's") Motion for Judgment on the Pleadings in Glover v. Hryniewich, et al., No. 2:17cv109, Doc. 22; (2) the City's Motion for Judgment on the Pleadings in Pridemore v. Hryniewich, et al., No. 2:17cv110, Doc. 22; (3) Defendant Richard J. Hryniewich's ("Hryniewich's") Motion for Judgment on the Pleadings in Glover v. Hryniewich, et al., No. 2:17cv109, Doc. 24; and (4) Hryniewich's Motion for Judgment on the Pleadings in Pridemore v. Hryniewich, et al., No. 2:17cv110, Doc. 24.

<u>Glover</u>, No. 2:17cv109, and <u>Pridemore</u>, No. 2:17cv110, are consolidated for the purposes of discovery. Both of the City's Motions, although filed in the two (2) separate cases, are identical. The same can be said of the two (2) Motions filed by Hryniewich. Given this connection and for clarity's sake, all references and citations to pleadings herein will be made to <u>Glover</u>, No. 2:17cv109, unless otherwise specified.

For the reasons stated below, the Court **DENIES** all four (4) Motions.

## I. BACKGROUND

### A. Factual Allegations[1]

On January 21, 2014, the City issued a purchase order to Willard Marine Services, Inc. ("Willard") "for the modification and repair of the City's 27 foot aluminum hull SAFE Boat vessel." Doc. 1 ("Compl.") ¶ 6. On February 6, 2014, the City issued an additional purchase order to Willard "for the repair and modification of the vessel's steering system." <u>Id.</u> The City took redelivery of the SAFE Boat on March 21, 2014. <u>Id.</u> ¶ 7. Hryniewich, employed by the City as a police officer, was present for the vessel's redelivery on behalf of the City. <u>Id.</u> ¶ 8. Willard's employees Glover and Pridemore, who are the Plaintiffs in these actions, were also present for the vessel's redelivery, as were two (2) City of Norfolk employees. <u>Id.</u> The individuals present for the redelivery proceeded to conduct a sea trial of the vessel. <u>Id.</u> ¶¶ 8–10.

"During the course of the sea trial, Hryniewich identified what he perceived to be steering and handling issues with the vessel and expressed those concerns to the other City of

---

[1] "The standard of review for Rule 12(c) motions is the same as that [for a motion to dismiss] under Rule 12(b)(6)." <u>Drager v. PLIVA USA, Inc.</u>, 741 F.3d 470, 474 (4th Cir. 2014). "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." <u>Venkatraman v. REI Sys., Inc.</u>, 417 F.3d 418, 420 (4th Cir. 2005) (citing <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motions for Judgment on the Pleadings. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

Norfolk employees on board." Id. ¶ 10. While maneuvering the SAFE Boat, Hryniewich pushed "the vessel to high speed and then, without slowing down or warning other than a 'hold on' with insufficient notice, recklessly turned the wheel hard to starboard causing the vessel to capsize." Id. ¶ 11. Plaintiffs were severely injured and taken to a local hospital. Id. ¶ 12. Plaintiffs suffered temporary and permanent physical injuries, considerable medical expenses, and lost wages. Id. Plaintiffs contend that their injuries were caused by the "negligence, gross negligence and recklessness" of Hryniewich in "attempting to make a severe turn at an unsafe speed." Id. ¶¶ 14, 16. Plaintiffs further allege that the City is liable for "failing to provide a competent operator of the vessel," id. ¶ 14, and that, "[a]t the time of the inception of the voyage . . . the City of Norfolk knew or should have known that Hryniewich was not competent to operate the vessel, thereby rendering it unseaworthy within the City of Norfolk's privity and knowledge." Id. ¶ 15.

## B.    Procedural History

On March 21, 2016, Glover and Pridemore each filed a complaint against the City and Hryniewich (collectively, "Defendants") in Norfolk Circuit Court ("State Actions"). Doc. 6, Ex. 1. Defendants responded with a Plea in Bar in both of the State Actions and Plaintiffs each filed a Motion to Strike Defendants' Plea in Bar. Id. at 2. On December 16, 2016, the Norfolk Circuit Court denied Plaintiffs' Motions to Strike. Doc. 7 at 3.

On February 23, 2017, Plaintiffs filed the instant Complaints ("Federal Actions"). Glover v. Hryniewich et al., No. 2:17cv109, Doc. 1; Pridemore v. Hryniewich, et al, No. 2:17cv110, Doc. 1. On March 6, 2017, the Court ordered that the Federal Actions be consolidated for discovery purposes. Doc. 4 at 1. On April 21, 2017, Defendants filed a Motion to Dismiss or Stay Pursuant to Rule 12(b)(1) ("Motion to Dismiss"). Doc. 5. On August 4,

2017, the Court granted the Motion to Dismiss in part, and stayed the Federal Actions pending a Norfolk Circuit Court ruling regarding whether sovereign immunity was available to Defendants in the State Actions. Doc. 11.

By letter opinion dated August 18, 2017, the Norfolk Circuit Court found that the City was engaged in a governmental function at the time of the alleged negligent incident, and therefore held that the City was entitled to sovereign immunity. See Doc. 12, Ex. A at 1. The Norfolk Circuit Court further held that Hryniewich was entitled to sovereign immunity as to Plaintiffs' simple negligence claims, but not as to their gross negligence claims. Id. Given the Norfolk Circuit Court's finding of sovereign immunity, this Court found that abstention was inappropriate, and the Court subsequently denied Defendants' Motion to Dismiss.

Defendants filed the instant Motions on October 18, 2017. Docs. 22, 24. Defendants then filed Third-Party Complaints against Willard and Safe Boats International, LLC ("Safe Boats") on October 31, 2017. Docs. 26, 27, 28, 29. Plaintiffs responded in opposition to the Motions on November 1, 2017. Docs. 34, 35. Defendants replied in further support of the Motions on November 7, 2017. Docs. 38, 39. Defendants filed a Request for Hearing on the Motions on November 8, 2017. Doc. 40.

On March 22, 2018, Defendants filed a Notice informing the Court that two (2) issues have been certified for interlocutory appeal to the Supreme Court of Virginia in the State Actions: (1) the Norfolk Circuit Court's granting of sovereign immunity for the City in a general maritime law case, and (2) that court's denial of general maritime law qualified immunity to Hryniewich. Doc. 56.

## II.  LEGAL STANDARDS

"The standard of review for Rule 12(c) motions is the same as that [for a motion to

dismiss] under Rule 12(b)(6)." Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Venkatraman, 417 F.3d at 420 ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff.") (citing Mylan Labs., 7 F.3d at 1134). A complaint establishes facial plausibility "once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Therefore, the complaint need not include "detailed factual allegations" as long as it pleads "sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct." Id. Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The court may look to documents attached to the complaint and those

incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

## III.  ANALYSIS

### A.  City's Motions

The City argues that it is entitled to judgment on the pleadings for three (3) reasons. First, the City argues that Plaintiffs have alleged that its vessel was unseaworthy, and, "because [Plaintiffs] have brought their suit under 33 U.S.C. § 905(b), an action for unseaworthiness is not available to them." Doc. 23 at 1. Second, the City argues that it is immune to Plaintiffs' claims "because the Commonwealth of Virginia's jurisdictional immunity extends to the City under the circumstances presented here and because . . . the City was acting as an arm of the state at the time of the Plaintiffs' injuries." Id. at 1–2. Third, the City argues that "Plaintiffs have failed to plead a violation of any of the duties that the City owed to them." Id. at 2. The Court rejects these arguments and **DENIES** the City's Motions.

#### *1.  Plaintiffs' claims are permissible maritime tort claims.*

Section 905(b) provides that "[t]he liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred." 33 U.S.C. § 905(b). The City claims that "[t]he Complaints assert a cause of action against the City for the alleged unseaworthiness of the Vessel," and thus that Plaintiffs—harbor workers otherwise entitled to recover under § 905(b)—have brought a claim which is barred under the statute. Doc. 23 at 5.

Plaintiffs argue that the Complaints do not charge a cause of action for unseaworthiness. "Proof of this is that the relief sought is not strict liability against the Defendant, which would

otherwise have been the remedy available prior to the 1972 amendment [that abrogated claims for unseaworthiness]." Doc. 34 at 4. Rather, Plaintiffs assert that they have brought negligence actions against Defendants under the general maritime law. Id. The use of the term "unseaworthiness" in the Complaints is descriptive, and reflects the fact that "there is considerable overlap between what may constitute the substantive negligence of a vessel and an unseaworthy condition." Id. As support for their position, Plaintiffs cite to Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811 (2001), in which the Supreme Court stated:

> It is settled that the general maritime law imposes duties to avoid unseaworthiness and negligence. . . . We are able to find no rational basis . . . for distinguishing negligence from seaworthiness.

Id. at 813, 815.

The Court **FINDS** that Plaintiffs' claims are permissible maritime tort claims, and not—as the City argues—unseaworthiness claims barred by the statute.

### 2.	The City is not entitled to sovereign immunity.

**a.	The City was not engaged in a "governmental function" that would merit immunity.**

The City next argues that it is immune from Plaintiffs' claims because "the full extent of Virginia's jurisdictional immunity is extended to municipalities when engaged in governmental functions delegated to them by the Commonwealth." Doc. 23 at 6. In support of this argument, the City cites to Tinsley v. Ferryboat West Point, in rem, and City of Portsmouth, 1946 A.M.C. 1532, 1946 WL 62670 (E.D. Va. 1946), for the proposition that municipalities involved in a "governmental function" are immune. In Tinsley, two (2) Navy officers were injured in a collision with a passenger ferry that was owned and operated by the City of Portsmouth and the County of Norfolk. Id. at 1533. The Tinsley plaintiffs sued the ferry in rem, as well as the City of Portsmouth and the County of Norfolk in personam. Id. The Court held that Portsmouth was

not immune to the plaintiffs' claims. Id. at 1535 ("[T]he operation of the ferry is not a public duty and therefore the City would be subject to a proceeding in admiralty.").

In its Motion, the City argues that it was performing a public duty at the time of the alleged accident, and thus that it is entitled to the protections of sovereign immunity, despite the general rule that "[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances . . . but does not extend to counties and similar municipal corporations." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). The very case that the City cites for its support defeats this argument. In Tinsley, the Court explained that immunity may extend to municipalities only in very limited circumstances, and the discussion focused on in rem claims:

> The immunity of a city against an action in admiralty was discussed by the District Court of Maryland in 1886 in the case of The F.C. Latrobe, 28 Fed. 377, which involved a libel against an ice boat owned and operated by the City of Baltimore. The city was held liable in personam. When dismissing the in rem feature of the action, the Court used the following language: "And when, in the performance of any duty, either imposed upon or assumed by it, the municipality employs maritime instrumentalities, I think it should be held answerable under the maritime law, with those exceptions only which public policy absolutely requires. If the vessel belonging to the municipality is used by it as a necessary instrument in the exercise of some municipal function, then . . . public policy requires that the municipality shall not be deprived of its use."

Tinsley, 1946 A.M.C. at 1534. The relevance of the public duty analysis in that case was to determine whether the municipality's vessel could be arrested in satisfaction of a plaintiff's claim, or whether the vessel was needed for "the exercise of some municipal function." The instant actions against the City are in personam; thus, the Tinley Court's acknowledgement of this limited "public duty" exception appears inapplicable.

Moreover, the Court in Tinley made the following observation about Workman v. New York, 179 U.S. 552 (1900), in which the Supreme Court held that the City of New York could

not claim sovereign immunity as to the negligence of its fire department:

> It was held that the City[,] having the general capacity to sue and be sued, could not successfully interpose a claim of sovereign immunity from the consequences of negligence of one of its departments or agencies. It would appear that the Workman case presents a stronger case for the City than the case at bar by reason of the fact that there was involved a fire boat under the control and management of the fire department, operating presumably with no profit, whereas in the instant case the vessel involved was a ferry boat operating for profit.

Tinley, 1946 A.M.C. at 1535. As Plaintiff has observed, "[f]ighting fires is as truly governmental as policing," and there is simply no way for the City to get around the Workman holding, nor the Supreme Court's later decision upholding Workman. See Northern Ins. Co. N.Y. v. Chatham Cty., Ga., 547 U.S. 189, 196 (2006) ("Workman dealt only with the substantive law of admiralty precisely because the Workman Court held that admiralty courts have jurisdiction over municipal corporations." (citing Workman, 179 U.S. at 565 ("[A]s a general rule, municipal corporations, like individuals, may be sued; in other words . . . they are amenable to judicial process for the purposes of compelling performance of their obligations.")))[2]

**b.  The City is not an "arm of the state."**

The City's alternative argument that it is an "arm of the state" and thus entitled to sovereign immunity is also unpersuasive. The Fourth Circuit has identified various factors for consideration in determining whether an entity is an arm of the state for immunity purposes. See Cash v. Granville Cty. Bd. of Educ., 242 F.3d 219, 223–24 (4th Cir. 2001). "The principal factor, upon which courts have virtually always relied, is whether a judgment against the governmental entity would have to be paid from the State's treasury." Id. at 223. "[A] finding that the State treasury will not be affected by a judgment against the governmental entity weighs

---

[2] See also Moore v. Hampton Rds. Sanitation Dist. Comm'n, 557 F.2d 1030, 1035 (4th Cir. 1976) ("[T]he weight of admiralty authority which has been cited or found is in line with those state decisions which have increasingly repudiated or narrowed the immunity of municipal corporations when performing governmental functions.").

against finding that entity immune. Nonetheless, the entity may still enjoy sovereign immunity if the judgment would adversely affect the dignity of the State as a sovereign and as one of the United States." Id. at 224.

The City admits that "it is true that any judgment entered against the City here would not be paid by the Commonwealth," but insists that "the animating purpose behind the monetary source factor is nevertheless implicated," because the purchase orders in this case were funded through a U.S. Department of Homeland Security grant program. Doc. 23 at 13. There is no basis for the City's speculative invocation of the "animating purpose behind the monetary source factor." The Cash Court made clear that the "twin reasons" for the adoption of the Eleventh Amendment were: (1) "the States' fears that 'federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin,'" and (2) "the integrity retained by each State in our federal system." Cash, 242 F.3d at 223 (quoting Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994) (other citations omitted)). The fact that the repairs to and sea trial of the vessel in question were funded through a federal grant does not threaten or implicate state sovereignty in any way. The Supreme Court "has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of State power.'" Cash, 242 F.3d at 226–27. Considering that the Commonwealth is not responsible for paying any judgment awarded against the City, and that such judgment does not implicate the sovereignty of the Commonwealth in any way, the Court **FINDS** that the City is not an arm of the state and thus is not immune to Plaintiffs' claims.

> 3. *Plaintiffs' Complaints properly allege claims of negligence against the City.*

The City argues that the alleged "hard, high-speed turn [which] caused the Vessel to

capsize . . . was a necessary component of the Sea Trial," and thus that "the risk of capsize was inherent to the Sea Trial." Doc. 23 at 18. "As a risk inherent to contract work," the City argues, "the City therefore owed the Plaintiffs no duty to prevent a capsize resulting from a hard, high-speed turn." Id. Rather, the City asserts that this duty was owed to Plaintiffs by their employer, Willard. Id. Moreover, the City again protests Plaintiffs' use of the term "unseaworthy" as representing "a cause of action that is unavailable to the Plaintiffs." Id. Thus, the only cause of action available to Plaintiffs, according to the City, is for breach of the "active control duty" under Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156 (1981), which the City argues Plaintiffs have failed to support.

As already discussed, a claim of unseaworthiness as a manifestation of a negligence claim is entirely appropriate under the general maritime law. See Norfolk Shipbuilding, 532 U.S. at 813, 815 ("It is settled that the general maritime law imposes duties to avoid unseaworthiness and negligence. . . . We are able to find no rational basis . . . for distinguishing negligence from seaworthiness."). To state such a claim, Plaintiffs must allege:

> (1) the existence of a duty required by law that obligates a person to conform to a certain standard of conduct to protect others against unreasonable risks of harm; (2) a breach of said duty by engaging in conduct that falls below the applicable standard; (3) a causal connection between the improper conduct and the resulting injury; [and] (4) an actual loss or injury to the plaintiff because of the improper conduct.

Gauthreaux v. United States, 712 F. Supp. 2d 458, 464 (E.D. Va. 2010) (citing Murray v. United States, 215 F.3d 460, 463 (4th Cir. 2000)).

Plaintiffs have alleged sufficient facts to support their maritime tort claims against the City. In the Complaints, Plaintiffs allege that the City, "as Hryniewich's employer and as owner, operator and manager of the vessel, owed a duty of reasonable care to all aboard, including

11

[Plaintiffs], to operate the vessel in a reasonable and workmanlike manner in accordance with good, accepted marine practices and to maintain the vessel in a seaworthy condition." Compl. ¶ 13. They further allege that the City breached this duty of care by "failing to provide a competent operator of the vessel." Id. ¶ 14. To support their contention that Hryniewich was not a competent operator of the vessel, Plaintiffs allege that Hryniewich—with insufficient warning to Plaintiffs and others aboard the vessel—attempted to make a severe turn in the vessel at an unsafe speed, thereby capsizing the vessel. Id. ¶¶ 11, 14. Plaintiffs allege that they were thrown from the vessel as a direct result of Hryniewich's actions, and that they sustained severe injuries which caused "enormous medical expenses and loss of wages which will continue into the future." Id. ¶ 12. The Court **FINDS** that these allegations, if true, allow the Court to draw the reasonable inference that the City was negligent. Accordingly, the Court **DENIES** the City's Motions, Docs. 22.

**B.     Hryniewich's Motions**

Hryniewich argues that he is entitled to judgment on the pleadings for two (2) reasons. First, Hryniewich argues that Plaintiffs' claims are barred by the federal doctrine of qualified immunity. Second, he argues that even if he is not immune, "the Complaints fail to state a claim for negligence . . . because they do not allege or plead facts to support an inference that the Accident was a foreseeable result of the turn Officer Hryniewich attempted." Doc. 25 at 4. The Court rejects these arguments and **DENIES** Hryniewich's Motions.

*1.     Hryniewich is not entitled to qualified immunity as a matter of law.*

Hryniewich argues that the federal common law doctrine of qualified immunity "protects municipal employees from maritime tort liability," even where the municipality itself is not immune. Doc. 25 at 4 (citing Yacht Sales Int'l, Inc. v. City of Virginia Beach, 977 F. Supp. 408,

412 (E.D. Va. 1997)). Hryniewich argues that "police officers acting within the scope of their authority are entitled to qualified immunity essentially as a matter of law," only needing to show that they were "acting in an official capacity and within the scope of [their] discretionary authority." Id. at 5 (citing Williamson v. City of Va. Beach, Va., 786 F. Supp. 1238, 1260 & n.28 (E.D. Va. 1992); Rabenstine v. Nat'l Ass'n of State Boating Law Adm'rs, Inc., 2015 WL 3470191, at *3 (E.D. Va. June 1, 2015)).

> In police driving cases, absent the assertion of some other right, the only right implicated usually is that of substantive due process, which is only violated for qualified immunity purposes where the defendant's conduct "so shocks the conscience as to constitute an abuse of governmental power."

Id. (quoting Temkin v. Frederick Cty. Comm'rs, 945 F.2d 716, 720 (4th Cir. 1991)). Hryniewich argues that Plaintiffs have not alleged that he "acted with the actual intent to harm [them]," and thus have not made the requisite showing to meet the "shocks the conscience" standard. Id. at 6.

Plaintiffs agree that Hryniewich was acting in his official capacity at the time of the alleged accident, and they do not appear to contest Hryniewich's contention that he was performing a discretionary task in conducting the sea trial. However, Plaintiffs argue that Hryniewich is not entitled to the protections of qualified immunity, pursuant to the "plainly incompetent" standard articulated by the Supreme Court. See Malley v. Briggs, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."); Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"). Plaintiffs argue that they have pled sufficient facts to support an allegation of incompetence, and thus that

Hryniewich is not immune to their negligence claims. Doc. 35 at 5.

This Court has previously recognized the "plainly incompetent" standard, and also noted that "there 'are surprisingly few cases addressing qualified immunity for non-constitutional maritime torts.'" Rabenstine, 2015 WL 3470191, at *3 (E.D. Va. June 1, 2015) (quoting Sol v. City of Miami, 776 F. Supp. 2d 1375, 1380 (S.D. Fla. 2011)). It appears to the Court that there are also surprisingly few cases that not only articulate, but also explicitly apply the plain incompetence standard. However, the Supreme Court has done so on at least one (1) occasion, and the Court **FINDS** that application of the standard in this case is appropriate. See Messerschmidt v. Millender, 565 U.S. 535, 553 (2012) ("The officers' judgment that the scope of the warrant was supported by probable cause may have been mistaken, but it was not 'plainly incompetent.'" (quoting Malley, 475 U.S. at 341)). The competence inquiry—as opposed to the "knowing violation of law," or "discretionary-ministerial" line-drawing exercise utilized in other cases—seems particularly suited to general maritime tort claims, which may clearly allege injury but find it difficult to attach that injury to the violation of a particular constitutional right or statute.

Plaintiffs have alleged sufficient facts to suggest that Hryniewich was plainly incompetent in his handling of the vessel. Plaintiffs allege that Hryniewich "pushed the vessel to high speed and then, without slowing down or warning other than a 'hold on' with insufficient notice, recklessly turned the wheel hard to starboard causing the vessel to capsize." Compl. ¶ 11. Plaintiffs further allege that Hryniewich took these actions "after identifying what he believed to be steering and handling issues." Id. ¶ 16 (emphasis added). Plaintiffs asserted multiple times that Hryniewich was not competent to operate the vessel, and that his actions during this specific incident constituted incompetence. See id. ¶¶ 14, 15, 17; see also id. ¶ 17 (asserting that

14

Hryniewich "was clearly not qualified" to operate the vessel). The Court **FINDS** that these allegations are sufficient to support a reasonable inference that Hryniewich was plainly incompetent in his operation of the vessel.[3]

2. *Plaintiffs' failure to allege that Hryniewich knew or should have known that his actions would cause the alleged accident does not merit dismissal of their claims.*

Hryniewich argues that, "even in the absence of immunity, the Complaints fail to state a claim because they have not alleged that the Accident was a foreseeable result of the turn Officer Hryniewich attempted, nor any facts to support such an inference." Doc. 25 at 15. In support of his argument, Hryniewich asserts that "[t]he scope of duty—i.e., the extent to which the risk of harm to the public is a foreseeable risk of particular conduct—is a pure question of law for the Court." Id. (citing Semler v. Psychiatric Inst. of Wash., D.C., 538 F.2d 121, 124 (4th Cir. 1976)). Because Plaintiffs "do not allege that Officer Hryniewich knew or should have known that turning the Vessel hard to starboard while it was traveling at high speed risked causing it to capsize," Hryniewich argues, they "have failed to establish that Officer Hryniewich's duty of care extended to avoiding a hard, high speed turn." Id. at 15–16.

Hryniewich offers no case law that suggests Plaintiffs are required to plead that the accident was a foreseeable result of the turn that Hryniewich allegedly attempted. The cases to which he cites all take place after the motion-to-dismiss stage. See Semler, 538 F.2d 121 (appeal from bench trial); Cargill, Inc. v. C & P Towing Co., 1990 WL 270199 (E.D. Va. August 16, 1990) (post-trial motion); Yacht Sales Int'l, Inc. v. City of Va. Beach, 977 F. Supp. 408 (E.D. Va. 1997) (summary judgment). There is no reason for the Court to require a more specific

---

[3] Hryniewich also argues that he is entitled to "employee sovereign immunity" under Virginia law. The Court rejects this argument, as this case is governed by admiralty law, which as discussed above does not recognize sovereign immunity for municipalities and their employees.

pleading than that outlined in Section III.A.3 of this Opinion for a claim of negligence:

> (1) the existence of a duty required by law that obligates a person to conform to a certain standard of conduct to protect others against unreasonable risks of harm; (2) a breach of said duty by engaging in conduct that falls below the applicable standard; (3) a causal connection between the improper conduct and the resulting injury; [and] (4) an actual loss or injury to the plaintiff because of the improper conduct.

Gauthreaux, 712 F. Supp. 2d at 464 (citing Murray, 215 F.3d at 463). Accordingly, and for the same reasons outlined in Section III.A.3 of this Opinion, the Court **FINDS** that Plaintiffs have alleged sufficient facts to state a general maritime tort claim against Hryniewich, and **DENIES** his Motions, Docs. 24.

## IV. CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendants' Motions, Glover v. Hryniewich, et al., No. 2:17cv109, Docs. 22, 24; Pridemore v. Hryniewich, et al., No. 2:17cv110, Docs. 22, 24.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
April 16, 2018