IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| DAVID I. GLOVER<br><br>and<br><br>TIMOTHY B. PRIDEMORE,<br>    Plaintiffs,<br><br>v.<br><br>RICHARD J. HRYNIEWICH,<br><br>and<br><br>THE CITY OF NORFOLK, VIRGINIA,<br>    Defendants and<br>    Third-Party Plaintiffs,<br><br>v.<br><br>SAFE BOATS INTERNATIONAL, LLC,<br><br>and<br><br>WILLARD MARINE, INC.,<br>    Third-Party Defendants. | Civil Action No. 2:17CV109 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Third-Party Defendant Willard Marine, Inc.'s Motion for Summary Judgment (ECF No. 243). The motion has been briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will deny Third-Party Defendant Willard Marine, Inc.'s Motion for Summary Judgment (ECF No. 243).

1

# I. FACTUAL ALLEGATIONS[1]

In 2007, the City of Norfolk ("the City") purchased a vessel, Marine 5, from Safe Boats International, LLC, ("Safe Boats") to use in maritime security operations. (Def. Hryniewich's Third-Party Compl. Safe Boats ¶¶ 5-8, ECF No. 27.) In 2014, the City entered into a contract with Willard Marine, Inc. ("Willard Marine") to refit Marine 5, a "2007 27-foot SAFE Boats International 270 Full-Cabin patrol boat." (Def. City's Third-Party Compl. Willard Marine ¶ 5, ECF No. 28.)[2] The contract with Willard Marine ("Contract") required Willard Marine to replace Marine 5's "twin 250-hp engines with twin 300-hp engines." (*Id.* ¶ 6; *see* Contract 4-6, ECF No. 37-1.)[3] In the "Goods and Services" section, the Contract listed "$8,488.69" as the labor cost to "remove old motors and rigging, install new motors & accessories, test and perform sea trial," and $36,631.00 for the cost of the two 300-horsepower outboard motors, for a total cost of $45,119.69. (Contract 5-6.) The Contract's "Scope of Work" section also called for Willard Marine to conduct a sea trial with employees of the City on board the vessel after the engines had been refitted. (*Id.* 6-7.) The City included insurance requirements for Willard Marine in the Contract, requiring the City of Norfolk to be listed as an additional insured for the project and mandating that "[i]nsurance shall be maintained during the entire term of the resulting contract and any extensions." (*Id.* 10.)[4] In specifying what forms of insurance must be in place, the Contract stated:

| Forms | Limits |
|---|---|
| Workers' Compensation | Statutory |

---

[1] The Court also incorporates by reference the undisputed facts set forth in *Glover v. Hryniewich*, 438 F. Supp. 3d 625, 631-33 (E.D. Va. Feb. 7, 2020). Only the facts pertinent to this specific motion for summary judgment are produced herein.

[2] There are four Third-Party Complaints in this action, each made by one Third-Party Plaintiff against one Third-Party Defendant. (*See* ECF Nos. 26-29.)

[3] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions.

[4] It is unclear on the record before the Court whether Willard Marine procured the Policy for this Contract or procured the Policy as a matter of course for the calendar year 2014. The Contract uses the phrase "[i]nsurance shall be maintained." (Contract 9.) However, the parties' briefs suggest that the Contract required Willard Marine to "procure" insurance specifically for this project. (Mem. Supp. Mot. Summ. J. 7, ECF No. 244; Br. Opp. Mot. Summ. J. 8, ECF No. 247.)

|  |  |
|---|---|
| Automobile Liability | $1,000,000 Combined Single Limit |
| Commercial General Liability, | $1,000,000 Combined Single Limit |
| including Contractual Liability and Products and Completed Operations Coverage | |
| Professional Liability | $1,000,000 Combined Limit |
| Umbrella/Excess Liability | $1,000,000 |

(*Id.* 11.) The Contract also noted that the "establishment of minimum limits of insurance by the City does not reduce or limit the liability or responsibilities of the Successful Bidder." (*Id.*)

The insurance policy at issue herein was a policy obtained by Willard Marine from Travelers Property Casualty Company of America ("Travelers") with an effective date from January 1, 2014 to December 31, 2014 with a total premium cost of $54,279 ("Policy") (Policy 8, ECF No. 243-4).[5] Willard Marine notes that under "Section II: General Liability Coverages, Coverage A: Bodily Injury and Property Damage," the Policy states that Travelers "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay" due to bodily injury and property damage that "takes place during the policy period and is caused by an occurrence." (Mem. Supp. Mot. Summ. J. 4-5, ECF No. 244.) Willard Marine also notes that the Policy included a "Blanket Additional Insured Endorsement" that amended the General Conditions of the Policy to include as an additional insured, "any person or organization whom the Named Insured is required to add as an additional insured on this policy under: (1) any written contract." (*Id.* 6.) Willard Marine contends that the City "was automatically an additional insured by virtue of the Blanket Additional Insured Endorsement." (*Id.*) Willard Marine also notes that the Policy contained several exclusions, one of which stated that "[t]his insurance does not apply to: [w]atercraft," specifically that the insurance would not apply to "'[b]odily injury' or 'property damage' arising out of the ownership or operation of any watercraft: (a) [o]wned by an insured; [or] (b) [c]hartered, leased, rented, or loaned to an insured." (*Id.* 5.)

---

[5] There are actually two copies of the Policy, with the first copy including two pages not included in the second copy, and the last few pages of each copy are different. (*See* Policy 15-16, 75-77, 143-46, ECF No. 243-4.)

Acting on the Contract, Willard Marine replaced Marine 5's twin 250-hp engines with twin 300-hp engines, her steering system, and two of her crew seats. (Def. City's Third-Party Compl. Willard Marine ¶ 8, ECF No. 28.) On March 21, 2014, two Willard Marine employees, Timothy Pridemore and David Glover ("Plaintiffs"), brought Marine 5 to Willoughby Bay to conduct the sea trial. (*Id.* ¶¶ 10-12.) Shortly thereafter, the sea trial was conducted with Defendant Richard Hryniewich and two other City employees present on behalf of the City and Plaintiffs present on behalf of Willard Marine. (*Id.* ¶¶ 12-15.) All five men launched Marine 5, and Defendant Hryniewich operated the vessel. (*Id.* ¶¶ 15-16.) During the sea trial, Defendant Hryniewich pushed the vessel to a high speed and made a hard turn. (*Id.* ¶ 16.) The vessel capsized and all those on board were thrown into the water, with Plaintiffs suffering severe injuries. (Compl. ¶¶ 11-12, ECF No. 1.) Plaintiffs brought suit against Defendants Hryniewich and the City of Norfolk ("Third-Party Plaintiffs") for the injuries sustained in the accident. (Def. City's Third-Party Compl. Willard Marine ¶ 17.)

On December 13, 2016, Travelers declined to provide a defense or indemnity to Defendants Hryniewich and the City in their pending lawsuit with Plaintiffs. (Mem. Supp. Mot. Summ. J. 6; Declination Letter 6, ECF No. 243-5.) Travelers cited both the Watercraft Exclusion and the Blanket Additional Insured Endorsement in its explanation of the declination. (Mem. Supp. Mot. Summ. J. 6; Declination Letter 5.)

## II. PROCEDURAL HISTORY

This action presents a lengthy and complex procedural history, but only the pertinent parts are reproduced below.[6] Defendants (and Third-Party Plaintiffs) Hryniewich and the City filed

---

[6] The Court also incorporates by reference the procedural history set forth in the Memorandum Opinion issued on January 7, 2022. *Glover v. Hryniewich*, 341 F.R.D. 36 (E.D. Va. 2022).

4

their Third-Party Complaints against Willard Marine and Safe Boats on October 30, 2017, alleging a claim of breach of contract to procure insurance as to Willard Marine (ECF Nos. 26, 28).[7]

On December 29, 2021, Willard Marine filed a Motion for Summary Judgment (ECF No. 243). Hryniewich and the City filed their Brief in Opposition to Willard Marine's Motion for Summary Judgment on January 11, 2022 (ECF No. 247) and Willard Marine filed its Reply on January 18, 2022 (ECF No. 248).

### III. LEGAL STANDARD

Summary judgment is appropriately granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when the "evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the initial burden of demonstrating the absence of any genuine issue of material fact." *DiSciullo v. Griggs & Co. Homes*, 2015 WL 6393813, at *4 (E.D.N.C. Oct. 22, 2015). The burden then "shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "Evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." *Anderson*, 477 U.S. at 255; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion."). "Furthermore, a 'material fact' is a fact that might affect the outcome of a party's case." *Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417,

---

[7] On July 20, 2018, Willard Marine filed a Motion for Leave to File its Fourth-Party Complaint, against Starr Indemnity and Liability Company ("Starr") (ECF No. 67) and a Motion to Add Necessary Party, seeking to add Starr to this litigation as Willard Marine's "umbrella/excess liability coverage" provider (ECF Nos. 69-70). On April 1, 2021, the Court dismissed both motions without prejudice noting that they "were filed in 2018" and "that circumstances may have changed significantly since then." (ECF No. 206.)

426–27 (E.D. Va. 2010) (citing *Anderson*, 477 U.S. at 247-48). "Whether a fact is considered to be 'material' is determined by the substantive law, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* at 428. "In ruling on a motion for summary judgment, the court does not resolve the dispute itself; instead, it finds only that there is sufficient evidence of the dispute requiring that 'the parties' differing versions of the truth' be resolved at trial." *Diprete v. 950 Fairview St., LLC*, No. 1:15CV00034, 2016 WL 6137000, at *2 (W.D. Va. Oct. 21, 2016) (citing *Anderson*, 477 U.S. at 248-49). "If the evidence as a whole is susceptible of more than one reasonable inference, a [fact finder] issue is created and a motion for judgment as a matter of law should be denied." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489-90 (4th Cir. 2005).

## IV. DISCUSSION

The City and Officer Hryniewich allege a breach of contract due to Willard Marine's failure to procure the appropriate insurance that would cover the City for any liability incurred during the sea trial. (Def. City's Third-Party Compl. Willard Marine ¶¶ 18-25.) Willard Marine asks for summary judgment "on the grounds that there is no genuine issue of material fact that the contract forming the basis for the [Third-Party Plaintiffs'] claims does not impose a duty upon Willard Marine to procure a commercial general liability policy of insurance without a watercraft exclusion." (Mot. Summ. J. 1.) Before the Court can address whether summary judgment can be granted, the Court must first address how the Court has subject matter jurisdiction over this dispute, what type of contract is at issue, which choice-of-law rules to apply, and which substantive law governs the contract.

### A. Subject Matter Jurisdiction

Under 28 U.S.C. § 1333(1), federal district courts have original subject matter jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." "The boundaries of admiralty

jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw." *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961). "Admiralty jurisdiction exists over contract disputes if the contract at issue is a maritime contract; whether a contract qualifies as a maritime contract 'depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions.'" *Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel*, 410 F. App'x 716, 722 (4th Cir. 2011) (quoting *Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 24 (2004)). Contracts for vessel repairs are considered maritime, but contracts for the original construction of vessels are not. *Kossick*, 365 U.S. at 735; *The Jack-O-Lantern*, 258 U.S. 96, 99 (1922).

Courts have found that contracts regarding the installation of new parts or the overhaul of systems on already constructed vessels that have previously launched in water are considered maritime contracts. *See, e.g.*, *Little Beaver Enters. v. Humphreys Rys., Inc.*, 719 F.2d 75 (4th Cir. 1983) (applying admiralty law to a contract for the installation of a new steering system on a vessel); *Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46 (5th Cir. 1967) (applying admiralty law to a contract to rebrick the floor of a vessel's starboard boiler room). More specifically, courts have held that contracts to replace engines in already constructed vessels are maritime contracts. *See, e.g.*, *Jo Ann B., Inc. v. Carter Machinery Co., Inc.*, No. 97-2133, 1998 WL 957456, at *1-3 (4th Cir. Sept. 22, 1998) (applying maritime law to a contract for the rebuilding of a ship's engine); *Southworth Mach. Co. v. F/V COREY PRIDE*, 994 F.2d 37, 40-41 (1st Cir. 1993) (finding that maritime law applies to a contract for the sale and installation of an engine in a commercial vessel); *Booth S.S. Co. v. Meier & Oelhaf Co.*, 262 F.2d 310, 311-13 (2d Cir. 1958) (concluding that the interpretation of a contract to overhaul engines was governed by admiralty law); *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 896 F. Supp. 2d 582, 595 (S.D. Tex. 2012) ("Contracts for repair, alteration, conversion, or reconstruction of a vessel which, previous to such work, was actively

7

engaged in maritime commerce or navigation generally are considered maritime contracts."); *Todd Marine Enterprises, Inc. v. Carter Mach. Co.*, 898 F. Supp. 341 (E.D. Va. 1995) (finding that a contract for the installation of new engines was a maritime contract because it was essential to the operation of a ship as a maritime vessel).

Officer Hryniewich and the City contend that the Contract is a maritime contract because it is a contract for the repair of a vessel. (Br. Opp. Mot. Summ. J. 8, ECF No. 247.) Willard Marine does not explicitly state a position on whether the Contract is a maritime contract. The Court finds that the Contract at issue in this dispute is in fact a maritime contract.

The parties do not dispute that the City of Norfolk entered into the Contract with Willard Marine to refit Marine 5, and that Willard Marine replaced Marine 5's twin 250-hp engines with twin 300-hp engines, her steering system, and two of her crew seats. Specifically, among other things, the Contract called on the vendor to "remove old motors and rigging[;] . . . supply and install new motors[;] . . . install new control cable, ignition switch, harnesses, and multifunction gauge[;] . . . [r]eplace steering cylinders on both outboards[;] . . . [and] [p]erform sea trial." (Contract 5-6.) While the Contract does not explicitly state that Marine 5 was previously launched in water, the Contract does suggest so by stating that the vessel was a 2007 model and the City of Norfolk sought to "replace existing Yamaha engines currently powering" the boat. (*Id.* at 4.) Furthermore, the Contract requires the installation of Yamaha engines to ensure "consistency of performance with other boats in the Harbor Patrol Unit." (*Id.*) Depositions taken in this matter also revealed the Norfolk Harbor Patrol used vessels like Marine 5 to assist U.S. Navy vessels and that the "City chose to upgrade the Vessel's engines specifically to enhance its performance in its vessel escort mission." *Glover v. Hryniewich*, 438 F. Supp. 3d 625, 631-32 (E.D. Va. Feb. 7, 2020) (summarizing depositions).

Taken together, these facts suggest that Marine 5 was an already constructed boat that had previously been launched into water by the City of Norfolk and that the Contract at issue was not to construct a new vessel but rather to update the boat by replacing its outdated engines to allow it to perform its duties in an improved manner. This Contract for the installation of new engines on an already constructed vessel mirrors the marine contracts in the cases aforementioned. *See, e.g.*, *Todd Marine Enterprises, Inc.*, 898 F. Supp. at 343. The Contract to replace the engines on Marine 5 did not render it "an essentially different vessel," but rather operated like a repair that still "preserve[d] the identity of the vessel." *The Jack-O-Lantern*, 258 U.S. at 99. As such, the Contract at issue is a maritime contract. Thus, because the Contract at issue is a maritime contract, the Court has admiralty subject matter jurisdiction over this dispute. *See Barna Conshipping, S.L.*, 410 F. App'x at 722.

### B. Governing Law

#### 1. Choice-of-Law

The choice-of-law approach to be applied in this dispute rests on how the Court has subject matter jurisdiction over this matter. If the Court has jurisdiction based on diversity of citizenship, then the choice-of-law rules of the forum state would apply, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), but if the Court has jurisdiction under admiralty, then federal maritime choice-of-law rules apply. *Sing Fuels Pte. Ltd. v. M/V Lila Shanghai*, 39 F.4th 263, 270 (4th Cir. 2022). As stated above, the Court has admiralty subject matter jurisdiction due to the presence of a maritime contract. Thus, federal maritime choice-of-law principles apply in determining whether to apply federal or state substantive law in interpreting the contract's terms.

#### 2. Substantive Law

In determining whether to apply state or federal substantive law under admiralty choice-of-law doctrine, the general rule dictates that "[w]hen a contract is a maritime one, and the dispute

9

is not inherently local, federal law controls the contract interpretation." *Norfolk S. Ry.*, 543 U.S. at 22-23. After determining (1) that a contract is a maritime contract, the court must ask (2) "is this case inherently local?" *Id.* at 27.[8] While it is possible that a "maritime contract's interpretation may so implicate local interests as to beckon interpretation by state law," federal substantive law will still govern the contract if the state interest conflicts with a federal interest. *Norfolk S. Ry.*, 543 U.S. at 27. Moreover, state law may only apply in an admiralty case if "the application of state law would not disturb the uniformity of maritime law." *Kossick*, 365 U.S. at 738; *see also Byrd v. Byrd*, 657 F.2d 615, 617 (4th Cir. 1981) ("[S]tate law, even though it does not contravene an established principle of admiralty law will, nevertheless, not be applied where its adoption would impair the uniformity and simplicity which is a basic principle of the federal admiralty law."). "[I]n an admiralty case, a court applies federal common law and can look to state law in situations where there is no admiralty rule on point." *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 160 F.3d 170, 174 (4th Cir. 1998).

    Officer Hryniewich and the City contend that federal common law applies in interpreting the Contract at issue and that Virginia state law may supplement federal maritime law if there is no admiralty rule on point. (Br. Opp. Mot. Summ. J. 8.) They contend that maritime law requires that the "'whole contract be brought into view'" and be interpreted in the context of "'the nature of the obligations between the parties.'" (*Id.* 9 (quoting *Colonna's Shipyard, Inc. v. United States*, No. 2:14CV331, 2015 WL 9008222, at *7 (E.D. Va. Dec. 14, 2015)).) Further, they note that Virginia law requires "the same standard, requiring the Court to construe the contract as a whole." (*Id.* (citing *Lansdowne Dev. Co. v. Xerox Realty Corp.*, 514 S.E.2d 157, 161 (Va. 1999)).)

---

[8] In determining whether a dispute is "inherently local," courts look to whether "[a] maritime contract's interpretation may so implicate local interests as to beckon interpretation by state law." *Norfolk S. Ry.*, 543 U.S. at 27. Here, the parties have failed to identify any state, local, or federal interest at stake in having a particular substantive law interpret the Contract at issue.

On the other hand, Willard Marine argues that Virginia state law applies to the contract where there is no well-established federal admiralty law on point. (Mem. Supp. Mot. Summ. J. 7.) Willard Marine repeatedly cites Virginia state law in its arguments regarding contract interpretation noting that Virginia law requires "'the court to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in the contract.'" (*Id.* (quoting *Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 683 S.E.2d 517, 525 (Va. 2009)).) Willard Marine argues that Virginia law dictates that the court cannot search for meaning beyond the contract itself when the contract "'is complete on its face [and] is plain and unambiguous in its terms.'" (*Id.* (quoting *Dominion Sav. Bank F.S.B. v. Costello*, 512 S.E.2d 564, 566 (Va. 1999)).)

The Court finds that under federal admiralty choice-of-law doctrine, federal admiralty substantive law applies to the interpretation of the Contract at issue. Further, the Court finds that Virginia state law, due to its similarity with admiralty law on contract interpretation, may also be used to interpret the Contract to the extent that Virginia state law does not conflict with the federal law.

The first prong of the *Kossick* test is satisfied. As previously stated, the Contract at issue is a maritime contract because it pertains to repairs of a maritime vessel. *See Todd Marine Enterprises, Inc.*, 898 F. Supp at 343. Turning to the second prong, the Court evaluates how federal admiralty law interprets contracts and whether that interpretation conflicts with Virginia state law's interpretation. If there is a federal admiralty law principle that is on point, then that law governs. *See Ost-West-Handel Bruno Bischoff GmbH*, 160 F.3d at 174.

When it comes to interpreting maritime contracts, "the long established 'elementary canon of interpretation is, not that particular words may be isolatedly (sic) considered, but that the whole contract must be brought into view and interpreted with reference to the nature of the obligations

11

between the parties, and the intention which they have manifested in forming them.'" *Colonna's Shipyard, Inc. v. United States*, No. 2:14CV331, 2015 WL 9008222, at *7 (E.D. Va. Dec. 14, 2015) (quoting *O'Brien v. Miller*, 168 U.S. 287, 297 (1897)). Virginia takes a similar approach to contract interpretation, applying the "plain meaning rule" and requiring courts to "read the contract as a single document and give meaning to every clause where possible." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (citing *Berry v. Klinger*, 300 S.E.2d 792, 796 (Va. 1983)). In Virginia, "[t]he search for this plain meaning does not myopically focus on a word here or a phrase there. Instead, it looks at a word in the context of a sentence, a sentence in the context of a paragraph, and a paragraph in the context of the entire agreement. The plain meaning of a word depends not merely on semantics and syntax but also on the holistic context of the word within the instrument." *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 (Va. 2019).

On close inspection, both Virginia and admiralty law require courts not to analyze words in isolation, but to place the meaning of words and phrases in the broader context of the entire agreement. Given the similarity between maritime law and Virginia state law with regard to interpreting a contract's terms, the choice of substantive law is not likely dispositive in determining the outcome of this motion. As such, the Court will apply maritime law to the extent that its rules are "on point," and the Court will supplement any gaps in the maritime law with Virginia law to the extent that the two do not conflict. *See Ost-West-Handel Bruno Bischoff GmbH*, 160 F.3d at 174.

**C. Contract Interpretation**

In interpreting the terms of a contract, both federal maritime and Virginia law require that the meaning of phrases and terms be determined in the context of the entire agreement, not in isolation. *See Colonna's Shipyard, Inc.*, 2015 WL 9008222, at * 7 (applying admiralty law); *Erie Ins. Exch.*, 822 S.E.2d at 355 (applying Virginia law). Using this method of interpretation, the

Court must first determine whether the insurance requirements within the Contract are ambiguous or unambiguous. *Sheridan v. Nationwide Ret. Sols., Inc.*, 313 F. App'x 615, 617 (4th Cir. 2009) (internal citations omitted).[9] If the Contract is unambiguous, then the Court may interpret the contract as a matter of law and grant summary judgment. *Id.* (internal citations omitted). However, "[w]hen a maritime contract is ambiguous, a factual question is presented to the meaning of its provisions and 'the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning.'" *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1358 (S.D. Fla. 2007), *aff'd*, 308 F. App'x 389 (11th Cir. 2009) (quoting 11 LORD, *supra*, § 30:7) If the contract is ambiguous and "leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Sheridan*, 313 F. App'x at 617 (internal citations omitted); *World-Wide Rts. Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992).

> In determining whether an ambiguity in a contract exists, federal maritime law dictates that
>
> > [d]isagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties. Where the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law.

*In re Fitzgerald Marine & Repair, Inc.*, 619 F.3d 851, 859 (8th Cir. 2010) (quoting *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009)).[10] Similarly, "[u]nder Virginia law, conflicting interpretations reveal an ambiguity only where . . . 'reasonable men . . . may

---

[9] "[W]hether the language of a contract is ambiguous is a question of law, [but] the resolution of that ambiguity is a question of fact." *Morrow v. Navy Fed. Credit Union*, No. 21-2323, 2022 WL 2526676, at *5 (4th Cir. July 7, 2022); 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30:7 (4th ed. 2006).

[10] In the Fourth Circuit, courts have held that "no writing is unambiguous if 'susceptible to two reasonable interpretations.'" *World–Wide Rights Ltd. Partnership*, 955 F.2d at 245 (quoting *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965)).!

reach reasonable, but opposite, conclusions' regarding the meaning of the disputed provision." *Erie Ins. Exch.* 822 S.E.2d at 355-56 (quoting *Caldwell v. Transportation Ins.*, 364 S.E.2d 1, 3 (Va. 1988)). "A 'reasonable' or 'fairly claimed' interpretation is one of two competing interpretations that are 'equally possible' given the text and context of the disputed provision." *Id.* (internal citations omitted). Indeed, a simple disagreement as to the meaning of a contract does not make the contract ambiguous, so first, the Court shall evaluate whether the insurance requirements of the Contract are ambiguous by assessing the reasonableness of the parties' interpretations. *See id.*

In this case, both parties claim that the Contract is not ambiguous on its terms, yet offer differing interpretations of what the Contract's terms require. Willard Marine contends that the terms of the Contract are plain and unambiguous and that they do "not impose a duty to obtain a general liability policy free of particular exclusions." (Mem. Supp. Mot. Summ. J. 2.) While claiming that the Court cannot "search for [the Contract's] meaning beyond the instrument itself," Willard Marine then goes on to cite various examples of extrinsic evidence arguing that watercraft exclusions are considered standard procedures in Commercial General Liability ("CGL") insurance policies. (*Id.* 8-10.) Further, Willard Marine notes that the Contract listed specific types of insurance Willard Marine should procure, but was silent regarding a watercraft exclusion in the insurance section. (*Id.* 11.) In essence, Willard Marine argues that the Contract required them to obtain CGL insurance but did not mention in explicit terms a requirement to obtain a policy free from a watercraft exclusion. (*Id.* 12.) Thus, Willard Marine believes that it did not breach the Contract, that Hryniewich's and the City's claims "fail as a matter of law," and that the Court should grant summary judgment. (*Id.*)

On the other hand, the City and Officer Hryniewich contend that "there is a dispute with respect to the Contract's proper meaning, which is up to the Court to resolve at trial." (Br. Opp.

14

Mot. Summ. J. 9.) They focus on the broader context of the Contract and the underlying purpose behind the insurance procurement requirement within the Contract. (*Id.* 9.) They contend the idea that the Contract did not require Willard Marine to obtain a CGL insurance policy without a watercraft exclusion "would render the insurance requirement provision meaningless" because the sea trial was an important aspect of the contractual duties of Willard Marine. (*Id.* 9-10.) The City and Officer Hryniewich also contend that other terms in the Contract, such as "contractual liability, products, and completed operations coverage" likely meant that Willard Marine should have obtained a CGL insurance that covered watercraft. (*Id.* 12.) Lastly, they cite extrinsic evidence in support of the idea that a CGL insurance policy in the maritime context often comes with "Watercraft Liability Coverage" that provides coverage for watercraft given the maritime nature of the undertaking. (*Id.*) Thus, the City and Officer Hryniewich contend that there exists a genuine dispute of material fact that warrants the denial of summary judgment. (*Id.* 13.)

The Court (1) disagrees with both parties and finds that the terms of the Contract regarding insurance coverage are in fact ambiguous, and (2) agrees with the City and Officer Hryniewich that there exists a genuine dispute of material fact regarding which party's interpretation of the insurance requirements is proper.

### 1. Ambiguity of the Terms

While the Contract lists the generic "forms" and "limits" of the insurance policies that Willard Marine should have obtained, it fails to define, explain, or elaborate on specifically what kinds of coverage those insurance policies should provide. (*See generally* Contract 9-10.) It remains unclear what the Contract meant when it stated that Willard Marine should procure "Commercial General Liability, including Combined Single Limit including Contractual Liability and Products and Completed Operations Coverage," and "Umbrella/Excess Liability" insurance policies for this Contract. (*Id.* 10.) Willard Marine cites extrinsic evidence in arguing that

15

watercraft exclusions are considered standard practice in CGL insurance policies and the "use of the phrase 'Commercial General Liability' within the . . . Contract does nothing to create any duty to avoid a particular exclusion." (Mem. Supp. Mot. Summ. J. 10.) Further, Willard Marine argues that the City's specific inclusion of these particular policies necessarily excludes additional conditions that were not stated explicitly in the Contract. (Reply Mem. Supp. Mot. Summ. J. 5-6, ECF No. 248.) On the other hand, the City and Officer Hryniewich contend that the terms of the insurance section, taken in the context of Willard Marine's duty to conduct a sea trial pursuant to the Contract, mandate that Willard Marine "was obligated to maintain insurance that would not exclude the very activity that Willard contracted to perform." (Br. Opp. Mot. Summ. J. 10.)

Looking to the terms of the insurance provisions and the duties of the parties under the Contract, it appears that the Contract is not "so worded that it can be given a certain definite legal meaning or interpretation." *In re Fitzgerald Marine & Repair, Inc.*, 619 F.3d at 859. The insurance policy terms within the Contract are never defined in the Contract and their meaning is not plain and unambiguous from the text of the Contract itself. Furthermore, the parties' contrasting interpretations of the Contract are reasonable "given the text and context of the disputed provision" because both offer plausible interpretations as to the meaning of the disputed insurance terms. *Erie Ins. Exch.* 822 S.E.2d at 355-56. On one hand, the Contract required Willard Marine to perform a sea trial as part of its obligations and required Willard Marine to obtain "Products and Completed Operations Coverage," and a watercraft exclusion would render the insurance requirement somewhat useless given Willard Marine's contractual duties. *TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 557 S.E.2d 199, 200 (Va. 2002) ("[N]o word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract."). On the other hand, the Contract did not explicitly state that Willard Marine was required to maintain an insurance policy

16

that covered watercraft. As such, the Contract's insurance requirements are ambiguous because the Contract is not clear as to its insurance requirements, and both parties offer reasonable interpretations as to what the Contract requires.

### 2. Genuine Dispute of Material Fact

As the meaning of the Contract's insurance requirements are ambiguous, the Court is permitted to analyze extrinsic evidence to attempt to determine the meaning of the disputed terms. *World-Wide Rts. Ltd. P'ship*, 955 F.2d at 245. If after considering the extrinsic evidence, there still exist genuine issues of material fact, the Court must deny summary judgment and leave the interpretation of the Contract's terms to the fact finder. *See id.*

While claiming that the Court must only interpret the Contract by evaluating the plain language, Willard Marine attempts to introduce extrinsic evidence that states that watercraft exclusions are standard in CGL insurance policies. (Mem. Supp. Mot. Summ. J. 9 (citing *Folksamerica Reins. Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 318 (2d Cir. 2005)) ("Typical CGL policies exclude 'liability for damages arising out of the ownership, maintenance, use, loading, or unloading of a watercraft.'").) In contrast, the City and Officer Hryniewich attempt to introduce an expert report by "an insurance industry expert" in which he states that "Willard should have provided coverage for the Sea Trial, because that is a part of the services Willard provides to its clients." (Br. Opp. Mot. Summ. J. 7.) The extrinsic evidence offered by the parties on what is considered "standard" or "best practice" in the maritime insurance industry serves to complicate the Contract's interpretation and creates a genuine question of fact that should be resolved by the trier of fact. *See World-Wide Rts. Ltd. P'ship*, 955 F.2d at 245.[11]

---

[11] Willard Marine contests the consideration of Third-Party Plaintiffs' expert reports in evaluating the motion for summary judgment because the reports were unsworn and not "'accompanied by affidavits or depositions swearing to their contents and conclusions.'" (Reply Mem. Supp. Mot. Summ. J. 7 (quoting *Edens v. Kennedy*, 112 F. App'x 870, 879 (4th Cir. 2004)).) The issue is not dispositive in the Court's ruling on the motion for summary judgment.

Even if the Court does not consider the City's and Officer Hryniewich's extrinsic evidence and Willard Marine is correct in suggesting that watercraft exclusions are standard under a CGL insurance policy, there still remain at least two questions that pose genuine issues of material fact solely on the terms of the Contract itself. First, there is a question of whether the Contract implied that Willard Marine obtain an endorsement that would void the watercraft exclusion given the maritime nature of the Contract and Willard Marine's obligations to perform the sea trial with passengers aboard the vessel. *See Folksamerica Reinsurance Co.*, 413 F.3d at 318 (noting that a CGL policy can void the watercraft exclusion with a "'Watercraft Liability Coverage' endorsement."). Second, there is a question of whether the Contract's requirement that Willard Marine must maintain "Contractual Liability and Products and Completed Operations Coverage," "Umbrella/Excess Liability," and "Automobile Liability" mandate that Willard Marine should have procured an insurance policy that covered any liability incurred via the vessel during the sea trial.

In addition to being genuine, these questions are material because the answer to them is likely to determine the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Audio MPEG, Inc. v. Dell Inc.*, 272 F. Supp. 3d 813 (E.D. Va. 2017) (finding that a factual dispute that might affect the outcome of the suit is a genuine and material dispute). If the Contract's insurance provisions require watercraft coverage, then Willard Marine would have breached the Contract by obtaining insurance coverage with a watercraft exclusion. However, if the Contract's insurance provisions *do not* require watercraft coverage, then Willard Marine would *not* have breached the Contract. As such, there is a genuine dispute of material fact because "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

---

As explained herein, the Court's decision does not rely on Third-Party Plaintiffs' expert report or any extrinsic evidence.

Analyzing the Contract for the repair and test trial of a marine vessel as a whole, the Court cannot conclude, as a matter of law, that the insurance provisions within that Contract permitted Willard Marine to maintain an insurance policy with a watercraft exclusion.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Third-Party Defendant Willard Marine's Motion for Summary Judgment (ECF No. 243).

An appropriate Order shall issue.

/s/ *[signature]*
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: September 28, 2022